# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION, MOLECULAR PROBES, INC., and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Plaintiffs and Counterdefendants,<br>v.<br>EBIOSCIENCE INC.<br>    Defendant and Counterclaimant. | Civil No. 10cv2127 IEG (NLS)<br><br>**ORDER RESOLVING JOINT DISCOVERY DISPUTE NUMBER ONE**<br><br>[Docket No. 29.] |

**I.     INTRODUCTION**

On March 30, 2011, the parties filed a Joint Motion for Determination of Discovery Dispute Number 1. The parties have agreed upon all but one of the terms of a protective order to cover the use of confidential information in this litigation. The issue presented to the Court for resolution is whether the in house attorneys ("Litigation Team") at Life Technologies Corporation ("Life") should be able to access information produced by Ebioscience, Inc. ("Ebioscience") as "Attorneys' Eyes Only." Life argues that all six members of the Litigation Team should have access to the information because none of the team members are competitive decision makers. Ebioscience argues that none of the in house litigation team should have access because they are or may become competitive decision makers. Ebioscience also argues that, if the court is inclined to grant access, that six attorneys is too expansive and that Life should be limited to allowing only two in house litigation attorneys to view the attorneys eyes only information. Having considered the papers presented by the parties, the Court finds that the

risk of harm to Ebioscience from disclosure to all six Litigation Team members outweighs any actual prejudice in Life's ability to litigate this case.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26 ©) governs the issuance of protective orders and empowers the Court to "make any order which justice requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that a trade secret or other confidential . . . information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7). The burden of proof is on the moving party to make a clear showing of particular and specific need for the protective order. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Under appropriate circumstances, the Court may issue a protective order that denies access to confidential information to in-counsel involved in the action. *Brown Bag Software v. Symantec*, 960 F. 2d 1465, 1472 (9th Cir. 1992).

When evaluating the risk of inadvertent disclosure of Defendants' confidential information, the Ninth Circuit has indicated that trial courts should balance the conflicting interests of the parties involved. *See Brown Bag,* 960 F.2d at 1470, *citing U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). The risk of disclosure of confidential information to competitors must be weighed against the risk that protection of this information will impair the prosecution or defense of the parties' claims. *Id.* The Court must examine the factual circumstances of the Litigation Teams' duties and responsibilities. The key inquiry is whether the Litigation Team members are "involved in 'competitive decision-making.'" *Brown Bag*, 960 F.2d at 1470 (barring in-house counsel from accessing confidential information even when outside counsel withdrew from the litigation) (quoting *U.S. Steel*, 730 F.2d at 1468 n.3) (allowing in-house counsel access to confidential information where both parties agreed that in-house counsel was not involved in competitive decision-making).

If counsel is involved in "competitive decision-making," "the risk of disclosure may outweigh the need for confidential information." *Intel Corp. v. Via Technologies, Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) (citations omitted). If the Litigation Team is involved in competitive decision making, Life must demonstrate actual prejudice to their case if access is not granted; increased difficulty in managing litigation is not sufficient to show actual prejudice. *See id.*; *Presidio Components, Inc. v. American*

*Technical Ceramics Corp.*, 546 F.Supp.2d 951, 953 (S.D. Cal. 2008).

## III. DISCUSSION

### A. Involvement of the Litigation Unit in Competitive Decision Making

The Litigation Unit consists of Kurtis D. MacFerrin (lead litigation counsel), Rip J. Finst, Cora L. Schmid, Amy Sun, Adam M. Tschop, and Polaphat Veravanich. (MacFerrin Decl. ¶¶ 3, 5.) Each member of the unit submitted declarations containing an identical list of "The policies and procedures that I follow to prevent inadvertent disclosures of another party's confidential information" including:

a. I do not render advice on or participate in Life Technologies' negotiations with third parties relating to business transactions **that require disclosing another party's confidential information without authorization**.

b. I do not draft or review proposed contracts for third party purchases of Life Technologies' products and/or services **using another party's confidential information without authorization**.

c. I do not render advice on or participate in decisions regarding the pricing, sales, or competitiveness of Life Technologies' products and/or services **using another party's confidential information without authorization**.

d. I do not render advice on or participate in decisions regarding product and/or service development **using another party's confidential information without authorization**, although I may be involved in efforts to re-design products to help avoid an allegation of infringement or misappropriation of intellectual property, but may not violate any relevant protective orders.

e. I do not render advice on or participate in decisions regarding the marketing or market potential of Life Technologies' products and/or services **based on another party's confidential information without authorization**.

f. I do not advise or participate in the development of inventions **using another party's confidential information without authorization**.

g. I do not engage in pre-issuance patent claim drafting.

h I do not draft, review, or approve new patent applications or continuations-in-part of applications **using another party's confidential information without authorization.**

I. I do not receive disclosure materials for new inventions or inventions under development **unless such materials are required for litigation** (e.g., to respond to discovery requests or related to patents-in-suit).

j. I do not make strategic decisions regarding the type and scope of patent protection that Life Technologies might pursue for new inventions or inventions under development.

(Veravanich Decl. ¶ 7, Tschop Decl. ¶ 6, Sun Decl ¶ 7, Finst Decl. ¶ 7, Schmid Decl. ¶ 7)(emphasis

added, hereinafter "Litigation Team Declarations.")[1]

While these declarations purport to prove that the Litigation Team members do not engage in competitive decision making, they actually prove the opposite. The Litigation Team Declarations establish that the Litigation Team members do not engage in pre-issuance patent claim drafting or make strategic decisions regarding the type and scope of patent protection Life pursues for new inventions (items h and j). In relation to the rest of the competitive decision making tasks, the Litigation Team Declarations only state they do not accomplish those tasks "using another party's confidential information without authorization." Because the declarations only establish the lack of use of confidential information, the natural implication is that the Litigation Team members are involved in: 1) contracts for third parties to purchase Life products and services; 2) decisions regarding pricing of Life's products and services; 3) product or service development; 4) marketing or market potential of Life's products and services; 5) development of inventions; and 6) new patent applications. Additionally, each member admits that they may participate in the re-design of a product to avoid allegations of misappropriation of intellectual property. (Litigation Team Declarations ¶ 7(d).)

At a minimum, Life has failed to provide any information from which the Court could conclude that the Litigation Team Members are not competitive decision makers. In the worst case, Life has admitted that the Litigation Team members are competitive decision makers.

The Court has no reason to doubt the integrity and good intentions of the Litigation Team. Inadvertent disclosure, however, necessarily happens without intent. Thus, the fact that the Litigation team does not knowingly or intentionally engage in competitive decision making activities using another party's confidential information is simply irrelevant. No matter how well intentioned counsel is, the danger of inadvertent disclosure remains because the human mind is not designed to effectively "lock up" secrets. *Brown Bag*, 960 F.2d at 1471; *see also U.S. Steel Corp v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)("Inadvertence, like the thief-in-the-night, is no respecter of its victims."); *F. T. C. v. Exxon Corp.*, 636 F.2d 1336, 1350-51 (D.C. Cir. 1980)("it is very difficult for the human mind to

---

[1] The MacFerrin Declaration contains the exact same list, except that is prefaced with: "The Litigation Team members are not allowed to not [sic] render advice on or participate in Life Technologies' competitive decision-making activities as set forth below." (MacFerrin Decl. ¶ 9.) The court assumes that the second "not" in this statement is a typographical error.

compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."); *Sullivan Marketing, Inc. v. Valassis Comm., Inc*., 1994 WL 177795 at *3 (S.D.N.Y. May 5, 1994)(finding such compartmentalization "nigh impossible").

### B. Policies and Procedures to Prevent Inadvertent Disclosure

Each Litigation Team member submitted a declaration detailing the physical safeguards in place to prevent inadvertent disclosure. Each Litigation Team member keeps all physical files in a locked cabinet or locked office; keeps all confidential information on a separate server not accessible by non-Litigation Team members; and maintains the confidential nature of any copies of confidential documents. (Litigation Team Declarations, ¶ 7.)[2] Additionally, the Litigation Team members keep their litigation files separate from the files of other legal departments and maintain a locked document storage area that is only accessible by the team members and their support staff. (MacFerrin Decl. ¶ 10.)

### C. Harm from Inadvertent Disclosure

Life and Ebioscience are direct competitors in the market for semiconductor nanocrystals. Ebioscience asserts that the trade secrets incorporated in its eFluor® nanocrystals directly relate to the success of the product. Accordingly, the potential injury from disclosure is great.

### D. Actual Prejudice from Restriction of Attorneys' Eyes Only Documents

Life explains that it has established an in house litigation team with responsibility for actively participate in the litigating of cases. (MacFerrin Decl. ¶ 4.) Life claims that a restriction on the Litigation Team's ability to see confidential documents "seriously cripples its ability to pursue this case." (Jt. Mtn. at 2.) In support of this allegation of "crippled" ability, Life asserts only the prejudice of being denied its counsel of choice. Life does not assert that the members of the team possess an expertise lacking in its outside counsel, Matthew D. Murphey of Troutman Sanders. Thus, Life does not assert any actual prejudice to its ability to litigate this case. *See Intel Corp. v. Via Techs., Inc.*, 198 F.R.D. 525, 528-29 (N.D. Cal. 2000)("Requiring a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden.'")(internal citation omitted).

//

---

[2] This information in found in Paragraph 6 in the Tschop Declaration and Paragraph 10 of the MacFerrin Declaration.

### E. Balancing the Interests

As the party seeking the restriction of access, Ebioscience bears the burden of establishing good cause for the protective order. In examining the evidence presented, the Court is forced to conclude that the Litigation Team members engage in competitive decision making tasks, raising the risk of inadvertent disclosure. Additionally, Ebioscience has asserted significant potential injury from the inadvertent disclosure of the trade secrets that contribute to the success of their product. On the other hand, Life has articulated only the inconvenience of being denied full use of their first choice of counsel. Life has failed to articulate any prejudice in its ability to present claims and defenses in this litigation.

Weighing the competing interests, the Court finds that Ebioscience's interest in reducing the likelihood that its trade secrets will be inadvertently disclosed outweighs Life's interest in having its entire six member Litigation Team view Ebioscience's most confidential information. However, Ebioscience proposes that none of Life's in house Litigation Team be permitted access to Attorneys' Eyes Only material. That proposal is too restrictive given the measures taken by Life to protect against inadvertent disclosure. An alternative proposal suggested by Ebioscience during the meet and confer process was to allow just two of Life's Litigation Team access to Attorneys' Eyes Only material. The Court finds this proposal strikes the appropriate balance. As Ebioscience points out, Life has previously agreed via stipulated protective order to similar restrictions on in house counsel access in this and other courts. See, *Boram Pharm. Co. Ltd. v. Life Technologies Corp.*, 10-cv-1582 JLS NLS Dkt. 64 (four in house counsel), *Promega Corp. v. Life Techs. Corp.*, Case No. 10-cv-281, Dkt. 31 (W.D. Wis.) (one in house counsel), *Life Techs. Corp. v. Illumina, Inc*. Case No. 09-706, Dkt. 52 (D. Del.) (three in house counsel). Moreover, this limitation allows Life to rely upon its in house expertise without exposing Ebioscience to the increased danger of inadvertent disclosure from allowing all six Litigation Team members to view the documents. From the declarations presented, all the Litigation Team members appear to engage in the same amount of competitive decision making. Accordingly, Life may choose the two Litigation Team members who are to have access to the Attorneys' Eyes Only documents and two support staff members who can view Attorneys' Eyes Only documents after executing the Confidentiality Agreement attached to the Protective Order as Exhibit A.

Finally, through Version 2 of its Proposed Protective Order, Ebioscience sought to limit the

Litigation Team members to viewing Attorneys' Eyes Only documents through a mechanism that would prohibit printing or copying of the information. Ebioscience, however, has not provided the Court with any justification for so limiting the Litigation Team members. In light of the precautions taken by the Litigation Team members, such as keeping confidential documents in locked spaces, there is no justification for refusing to allow the two Litigation Team members to print or copy the Attorneys' Eyes Only documents. The Litigation Team members chosen to have access to the Attorneys' Eyes Only documents shall not allow any unauthorized Litigation Team members to have access and shall not maintain the Attorneys' Eyes Only documents in a manner that renders them accessible to any other Litigation Team members.

## IV. CONCLUSION

For the above mentioned reasons, It Is Hereby Ordered that: Two members of the Life Litigation Team and two support staff members shall be allowed access to materials produced by Ebioscience marked as Attorneys' Eyes Only.

IT IS SO ORDERED

DATED: April 26, 2011

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court