MATTHEW D. MURPHEY (SBN: 194111)
TROUTMAN SANDERS LLP
550 West B Street, Suite 400
San Diego, CA 92101
Telephone: (619) 557-4310
Email: matt.murphey@troutmansanders.com

FRANCIS M. WIKSTROM (admitted *pro hac vice*)
KRISTINE E. JOHNSON (admitted *pro hac vice*)
PARSONS BEHLE & LATIMER
One Utah Center
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, UT 84145-0898
Telephone: (801) 532-1234
Email: fwikstrom@parsonsbehle.com
kjohnson@parsonsbehle.com

Attorneys for Plaintiffs and Counter-defendants LIFE TECHNOLOGIES CORPORATION, MOLECULAR PROBES, INC. and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

POLAPHAT VERAVANICH (SBN: 203964)
LIFE TECHNOLOGIES CORPORATION
5791 Van Allen Way
Carlsbad, CA 92008
Telephone: (760) 603-7200
Email: paul.veravanich@lifetech.com

Attorney for Plaintiffs and Counter-defendants LIFE TECHNOLOGIES CORPORATION and MOLECULAR PROBES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LIFE TECHNOLOGIES CORPORATION , MOLECULAR PROBES, INC. AND THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

Plaintiffs-Counterclaim Defendants,

v.

EBIOSCIENCE, INC.,

Defendant-Counterclaim Plaintiff

CASE NO. 10-CV-2127-IEG (NLS)

**PLAINTIFFS' OPPOSITION TO DEFENDANT EBIOSCIENCE, INC.'S MOTION TO STAY PENDING REEXAMINATION REQUESTS**

**- REDACTED -**

CONFIDENTIAL ORIGNAL FILED UNDER SEAL

## Table of Contents

Page

**I. INTRODUCTION** ........ 1

**II. STANDARDS GOVERNING THE MOTION TO STAY FAVOR DENIAL** ........ 1

A. Life Will Be Unduly Prejudiced If This Case Is Delayed ........ 2

1. Life And Defendant Directly Compete In A Two-Player Market ........ 2

2. The Resultant Stay Is Likely To Exceed Defendant's Estimate ........ 4

3. Defendant Delayed In Seeking A Stay ........ 6

B. The Effect Of The Requested Reexaminations On The Issues In This Case Is Speculative At Best ........ 9

1. Defendant Will Not Be Estopped By The Outcome Of The *Ex Parte* Reexaminations ........ 9

2. The Claims Are Likely To Survive *Ex Parte* Reexamination ........ 11

C. This Case Is Well-Underway And Not In Its Infancy ........ 12

**III. CONCLUSION** ........ 13

## TABLE OF AUTHORITIES

**CASES** Page

*Adaptor, Inc. v. Sealing Sys.*, No. 09cv1070, 2010 U.S. Dist. LEXIS 123810 (E.D. Wis. Nov. 22, 2010) .......... 5, 9

*Area 55, Inc. v. Celeras LLC*, No. 09cv2755 (S.D. Cal. May 26, 2010) .......... 11

*Baratta v. Homeland Housewares, LLC*, No. 05-60187, 2007 U.S. Dist. LEXIS 92845 (S.D. Fla. Dec. 13, 2007) .......... 3

*Belden Techs., Inc. v. Superior Essex Communs. LP*, No. 08-63, 2010 U.S. Dist. LEXIS 90960 (D. Del. Sept. 2, 2010) .......... 6

*Cooper Techs. Co. v. Thomas & Betts Corp.*, No. 06-cv-242, 2008 U.S. Dist. LEXIS 25938 (E.D. Tex. Mar. 31, 2008) .......... 2

*eBioscience Corp. v. Invitrogen Corp.*, 08cv1729 (S.D. Cal. Sept. 22, 2008) .......... 6, 8

*eComSystems, Inc. v. Shared Mktg. Servs., Inc.*, No. 10cv1531, 2011 U.S. Dist. LEXIS 10174 (E.D. Tex. Jan. 26, 2011) .......... 1, 2, 4, 10, 11

*ESCO Corp. v. Berkeley Forge & Tool, Inc.*, No 09-1635, 2009 U.S. Dist. LEXIS 94017 (N.D. Cal. Sept. 28, 2009) .......... 1

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) .......... 1

*Freeman v. Minnesota Mining and Mfg. Co.*, 661 F. Supp. 886 (D. Del. 1987) .......... 8

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l*, No. 03-1431, 2007 U.S. Dist. LEXIS 44107 .......... 2, 7, 13

*I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07cv1200, 2008 U.S. Dist. LEXIS 40995 (S.D. Cal. Apr. 15, 2008) .......... 5, 8

*Innovative Office Prods. v. SpaceCo, Inc.*, No. 05-4037, 2008 U.S. LEXIS 67500 (E.D. Pa. Aug. 28, 2008) .......... 5, 8

*Invitrogen Corp. v. Evident Techs., Inc.*, 08cv00163 (E.D. Tex. Apr. 29, 2008) .......... 6, 7

*Mike's Train House, Inc. v. Broadway Ltd. Imps., LLC*, No. 09-2657, 2011 U.S. Dist. LEXIS 22224 (D. Md. Mar. 3, 2011) .......... 4

*Molecular Bioprods., Inc. v. Porex Bio Prods., Inc.*, No. 02cv0227 (S.D. Cal. Feb. 21, 2003) .......... 11

*Nat'l Oilwell Varco, LP v. Auto-Dril, Inc.*, No. 5:09-cv-85, 2010 U.S. Dist. LEXIS 90963 (E.D. Tex. Jan. 5, 2010) .......... 2

*Nat'l Flooring Equip., Inc. v. Equipment Dev. Co.*, No. 09-cv-0974 (D. Minn. Jan. 28, 2010) .......... 3

*Polymer Techs. v. Bridwell*, 103 F.3d 970 (Fed. Cir. 1996) .......... 4

*Remington Arms Co. v. Modern Muzzleloading, Inc.*, No. 97cv00660, 1998 U.S. Dist. LEXIS 23636 (M.D.N.C. Dec. 17, 1998) ........ 8

*Tesco Corp. v. Weatherford Int'l, Inc.*, 559 F. Supp. 2d 848 (S.D. Tex. 2009) ........ 2

*Tokuyama Corp. v. Vision Dynamics*, No. 08-2781, 2008 U.S. Dist. LEXIS 84968 (N.D. Cal. Oct. 8, 2008) ........ 5

*V2 Optics, LLC v. Oakley, Inc.*, Case No. 01cv0376 (S.D. Cal. Aug. 13, 2001) ........ 5

*Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ........ 1

**STATUTES**

35 U.S.C. § 303(a) ........ 13

35 U.S.C. § 315(c) ........ 9

**I. Introduction**

Contrary to Defendant eBioscience, Inc.'s ("Defendant") suggestion, this case is not in the earliest stages, having been pending for over seven months with a number of significant events already having taken place. Moreover, Plaintiffs Molecular Probes, Inc., Life Technologies Corp. (collectively "Life"), and The Regents of the University of California (collectively "Plaintiffs") will be unduly prejudiced by a delay of this case because Life and Defendant are direct competitors in a two-player market, and Defendant CONFIDENTIAL MATERIAL OMITTED. Defendant's allegations of any delay by Plaintiffs in bringing this case are also overblown—Plaintiffs immediately filed their complaint against Defendant when it became apparent that Plaintiffs' targeting of Defendant's supplier as the mechanism for stopping Defendant's infringing activity was unsuccessful. There is also no assurance that the issues in this case will be narrowed subsequent to the proposed reexaminations. For example, the PTO has yet to grant the requests, and in fact has not even assigned filing dates to two of the three. Also, since the requested reexaminations are *ex parte* reexaminations—rather than *inter partes* reexaminations—Defendant will not be prevented from asserting the very same prior art in this case (and in fact it already is). Because the factors relevant to Defendant's motion weigh against a stay, Defendant's motion should be denied, allowing this case to expeditiously continue its course to conclusion.

**II. Standards Governing The Motion To Stay Favor Denial**

Although courts have the authority to order a stay pending conclusion of a PTO reexamination, concurrent litigation and reexamination proceedings are nevertheless permitted because "litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988). And there is no *per se* rule requiring that patent cases be stayed pending reexaminations. *eComSystems, Inc. v. Shared Mktg. Servs., Inc.*, No. 10cv1531, 2011 U.S. Dist. LEXIS 10174, at *4 (E.D. Tex. Jan. 26, 2011); *ESCO Corp. v. Berkeley Forge & Tool, Inc.*, No 09-1635, 2009 U.S. Dist. LEXIS 94017, at *6 (N.D. Cal. Sept. 28, 2009) (citing *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001)). Such a rule would invite parties to unilaterally derail

litigation via the reexamination process. *ESCO*, 2009 U.S. Dist. LEXIS 94017, at *6; *eComSystems*, 2011 U.S. Dist. LEXIS 10174, at *4. To determine whether to order a stay pending reexamination of a patent, three factors are considered: (1) the stage of the litigation with respect to discovery and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *I-Flow Corp. v. Apex Med. Techs.*, No. 07cv1200, 2008 U.S. Dist. LEXIS 40995, at *4 (S.D. Cal. April 15, 2008). None of these factors favor a stay and Defendant's motion should therefore be denied.

A. Life Will Be Unduly Prejudiced If This Case Is Delayed

A critical factor when ruling on a motion to stay is "whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *I-Flow*, 2008 U.S. Dist. LEXIS 40995, at *4. This consideration weighs in favor of Plaintiffs—and against a stay—because Life and Defendant are direct competitors, the length of the proposed stay will be much longer than what Defendant suggests, and Defendant delayed in seeking reexaminations and the stay.

1. Life And Defendant Directly Compete In A Two-Player Market

Because Life and Defendant are direct competitors in what is a two-company market, Plaintiffs stand to suffer undue prejudice with every sale of infringing product by Defendant during a stay of this case. Courts routinely find that a patentee will be unduly prejudiced by a stay of litigation pending reexamination where, as here, the parties are direct competitors. *Cooper Techs. Co. v. Thomas & Betts Corp.*, No. 06-cv-242, 2008 U.S. Dist. LEXIS 25938, at *1 (E.D. Tex. Mar. 31, 2008) (where parties are direct competitors a stay would prejudice the patent owner); *Nat'l Oilwell Varco, LP v. Auto-Dril, Inc.*, No. 5:09-cv-85, 2010 U.S. Dist. LEXIS 90963, at *2 (E.D. Tex. Jan. 5, 2010) (denying stay because "[the] parties are direct competitors and a denial of timely enforcement of either party's patent rights would indeed unduly prejudice that party"); *Tesco Corp. v. Weatherford Int'l, Inc.*, 559 F. Supp. 2d 848, 852 (S.D. Tex. 2009) (denied stay because "[w]here parties are direct competitors, a stay would likely prejudice the non-movant").

The competitors in the market for the technology at issue—semiconductor nanocrystals for use in life sciences—are limited to Life and Defendant. In presentations describing the accused products, for example,

CONFIDENTIAL MATERIAL OMITTED

These facts support the conclusion that Life will be unduly prejudiced by any stay of this case.

And contrary to Defendant's assertion, the theoretical availability of monetary damages does not mitigate the undue prejudice that Plaintiffs will suffer from a delayed resolution of this case. For example, while Plaintiffs are ultimately entitled to monetary damages for Defendant's infringement of the patents-in-suit, monetary damages will fail to address injuries that Life will suffer due to the lost market share caused by Defendant's continuing infringement while this case is prolonged. Defendant expresses no intent to stop selling the products during its proposed stay, but instead implies that it intends to continue its activities unabated. *See* Mot. at 6. Courts faced with similar facts have denied motions to stay. *See* Ex. A, Order, *Nat'l Flooring Equip., Inc. v. Equipment Dev. Co.*, No. 09-cv-0974, D.I. 30, at 4 (D. Minn. Jan. 28, 2010) ("This Court concludes that, because EDCO intends to continue selling the accused product throughout the stay, National will suffer undue prejudice. This factor, therefore, militates against a stay here."); *Baratta v. Homeland Housewares, LLC,* No. 05-60187, 2007 U.S. Dist. LEXIS 92845, at *6 (S.D. Fla. Dec. 13, 2007) (finding the fact that "[d]efendant continues to sell the allegedly infringing product" weighed against granting a stay).

Not only will Defendant continue its infringing sales,

CONFIDENTIAL MATERIAL OMITTED

---

[1] CONFIDENTIAL MATERIAL OMITTED

[2] Unless noted otherwise, all Exhibits referenced in this opposition are attached to the Declaration of Polaphat Veravanich submitted concurrently with this brief.

CONFIDENTIAL MATERIAL OMITTED

Because this is a two-player market, each sale by Defendant reflects lost market share for Life. Courts have denied motions to stay for this very reason, *i.e.*, market loss is difficult to measure in monetary damages, which therefore weighs against a stay. *See eComSystems*, 2011 U.S. Dist. LEXIS 10174, at *10 (denying stay because "market loss is difficult to measure in monetary damage"); *Cf. Polymer Techs. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) ("Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat. Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option."). The continuing damage in the marketplace that Life will suffer during a stay of this case militates for a denial of Defendant's motion

2. The Resultant Stay Is Likely To Exceed Defendant's Estimate

The potential length of the delay of this case pending reexamination is likely to be much longer than Defendant suggests. Defendant asserts that, based on the median pendency of a reexamination, this case would be stayed by 20 months if its motion were granted. Defendant does not mention that the average pendency of a reexamination is actually 25.7 months. Ex. B, Mar. 31, 2011 PTO *Ex Parte* Reexamination Filing Data. Defendant also conveniently ignores the appellate process relating to a reexamination, which could add approximately two years to the reexamination process. *Mike's Train House, Inc. v. Broadway Ltd. Imps., LLC*, No. 09-2657, 2011 U.S. Dist. LEXIS 22224, at *8-9 (D. Md. Mar. 3, 2011) ("Furthermore, the average pendency of reexamination proceedings is just over two years, and an appeal, available as of right, extends the time to just over four years."); *eComSystems*, 2011 U.S. Dist. LEXIS 10174, at *11 ("The reexamination process averages 25.4 months to complete, and the appellate process averages 24 months to complete"). Defendant effectively asks the Court to put this case on

hiatus for over four years, not 20 months. Of course, Plaintiffs would suffer undue prejudice even if this case were delayed 20 months rather than four plus years.

The uncertain length of the proposed stay in this case is even more pronounced based on the fact that the PTO has not granted any of the requests, and in fact has not yet accorded two of the three reexamination requests a filing date due to deficiencies in the filings. Ex. L, Notice of Failure to Comply with *Ex Parte* Reexamination Request Filing Requirements for the ’723 Patent; Ex. M, Notice of Failure to Comply with *Ex Parte* Reexamination Request Filing Requirements for the ’069 Patent. The status of the reexamination requests in this case is therefore comparable to the situation in the *V2 Optics* case. In the Court’s order denying a motion to stay pending reexamination in that case, the Court noted that “V2 Optics has not yet applied to the PTO for reexamination, much less been granted permission to proceed.” Ex. C, Order, *V2 Optics, LLC v. Oakley, Inc*., Case No. 01cv0376 (S.D. Cal. Aug. 13, 2001), DN 116, at 5 (Gonzalez, J.). Like in *V2 Optics*, none of Defendant’s reexamination requests have been granted, and two were incomplete filings and are thus effectively not on file at all. Staying this case given the uncertain status of the reexamination requests would further compound the prejudice that Life would suffer. *See Tokuyama Corp. v. Vision Dynamics*, No. 08-2781, 2008 U.S. Dist. LEXIS 84968, at *4 (N.D. Cal. Oct. 8, 2008) (“The PTO has not granted the defendant’s request for reexamination yet, let alone begun the reexamination process. … That no PTO proceedings are underway creates a delay to the plaintiffs which is prejudicial.”).

Defendant half-heartedly claims that Plaintiffs’ decision to not seek a preliminary injunction renders moot the undue delay and irreparable harm that would result from the requested stay. Courts have rejected similar arguments by parties seeking to stay litigation. *See Adaptor, Inc. v. Sealing Sys.*, No. 09cv1070, 2010 U.S. Dist. LEXIS 123810 (E.D. Wis. Nov. 22, 2010) (denying stay and rejecting argument that failure to request preliminary injunction amounted to passive concurrence that monetary damages are sufficient); *Innovative Office Prods. v. SpaceCo, Inc.*, No. 05-4037, 2008 U.S. LEXIS 67500 (E.D. Pa. Aug. 28, 2008) (denying stay where movant, in part, attempted to rely on patentee’s failure to seek preliminary injunction). Moreover, what Defendant fails to acknowledge is that it never voiced an intent to

file for reexaminations of the patents-in-suit and seek a stay the case when the parties negotiated the proposed case schedule. Based on the relatively expeditious schedule submitted to (and entered by) the court, which was based on the patent local rules, Plaintiffs chose not to burden the court by seeking preliminary relief. Finally, whether or not the patentee moved for a preliminary injunction is not dispositive when considering a motion to stay, particularly where, as here, the parties are direct competitors. *See Belden Techs., Inc. v. Superior Essex Communs. LP*, No. 08-63, 2010 U.S. Dist. LEXIS 90960, at *12 n.4 (D. Del. Sept. 2, 2010) (denying stay and recognizing that a "request for a preliminary injunction is simply one (non-dispositive) indicia of the presence of direct competition").

3. Defendant Delayed In Seeking A Stay

Defendant accuses Plaintiffs of delaying in filing their complaint, which, per its logic, somehow forecloses Plaintiffs from being prejudiced during a stay of this case. In reality, not only did Plaintiffs expeditiously seek relief against Defendant, it was Defendant who delayed in filing the present motion. Defendant mischaracterizes the events leading up to the current litigation. This case is the logical extension of litigation that commenced in 2008, when Plaintiffs chose to pursue the company that supplied Defendant with the accused products. On April 28, 2008, Plaintiffs filed a complaint against Evident Technologies based on that company's infringement of the patents-in-suit. Ex. D, Compl., *Invitrogen Corp. v. Evident Techs., Inc.*, 08cv00163 (E.D. Tex. Apr. 29, 2008), D.I. 1. Evident Technologies and eBioscience openly acknowledged that eBioscience acquired the accused products from Evident. For example, in a complaint filed in this district, eBioscience admitted that: (1) "eBioscience and Evident are parties to a certain license agreement (the 'Agreement') executed January 31, 2008 involving certain technology relating to what are called 'quantum dots'"; (2) "[s]ince at least the time of execution of the Agreement, eBioscience has been and is making and using products pursuant to the Agreement that practice the Licensed Technology"; and (3) "[t]hese products share technical similarities with products … accus[ed] of infringement in [*Invitrogen v. Evident*]." Ex. E, Compl., *eBioscience Corp. v. Invitrogen Corp.*, 08cv1729 (S.D. Cal. Sept. 22, 2008), D.I. 1, at ¶ 13. The *Invitrogen v. Evident* case concluded in Plaintiffs' favor when, on

June 29, 2010, the court entered a consent judgment holding that Evident infringed the patents-in-suit, and that the patents are valid and enforceable. Ex. F, Consent J., *Invitrogen Corp. v. Evident Techs., Inc.*, 08cv00163 (E.D. Tex. June 29, 2010), D.I. 98.

Unfortunately, Defendant's infringing activities continued unabated, thus forcing Plaintiffs to bring the present action on October 12, 2010, a mere three and a half months after the *Invitrogen v. Evident* case concluded. And even more recently, eBioscience touted in a January 2011 investor presentation, excerpted below, CONFIDENTIAL MATERIAL OMITTED

CONFIDENTIAL MATERIAL OMITTED

CONFIDENTIAL MATERIAL OMITTED

CONFIDENTIAL MATERIAL OMITTED

Under similar circumstances, a court in this district decided that the plaintiff did not delay in bringing an infringement action when it chose to pursue an alternative means of resolving the dispute before filing the complaint: "Plaintiff explains it was pursuing an out-of-court resolution of this matter after sending its cease-and-desist letter, and that it filed the complaint when those efforts proved fruitless. Under these circumstances, the ninth month lapse cannot be considered 'delay.'" *I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07cv1200, 2008 U.S. Dist. LEXIS 40995, at *7-8 (S.D. Cal. Apr. 15, 2008). The reality is that Plaintiffs have diligently sought to stop Defendant's infringement of the patents-in-suit since April 2008. Any delay in resolving this case that will arise from granting Defendant's motion will further prejudice Plaintiffs by allowing Defendant to continue its infringement for an even longer period of time.

In fact, if any party has delayed it is Defendant. Defendant waited for seven months before belatedly filing its reexamination requests and this motion to stay. Additionally, all but

one of the references Defendant cited in its reexamination requests was also cited by Evident in the earlier litigation.[3]  Yet Defendant was well-aware of the earlier case, as it admitted in the declaratory judgment complaint it filed in this district.  Ex. E, Compl., *eBioscience Corp. v. Invitrogen Corp.*, 08cv1729 (S.D. Cal. Sept. 22, 2008), D.I. 1, at ¶ 12.  Moreover, Defendant had access to the non-public invalidity contentions served by Evident in the earlier case between Plaintiffs and Evident, as witnessed by Defendant's reliance on and incorporation by reference of Evident's contentions as part of Defendant's own invalidity contentions in this case.  Ex. H, Def.'s Invalidity Contentions, at 2.  By waiting for seven months before seeking reexaminations of the patents-in-suit and a stay of this case, Defendant's attempted commencement of the reexamination process is merely a dilatory tactic, a strategy courts criticize when denying motions to stay.  *Innovative Office Prods.*, 2008 U.S. LEXIS 67500, at *13 (denying stay while citing dilatory tactic of waiting to seek reexamination); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l*, No. 03-1431, 2007 U.S. Dist. LEXIS 44107, at *16 (N.D. Cal. June 6, 2007) (denying stay and refusing to "allow a party to use reexamination as 'a mere dilatory tactic'"); *Remington Arms Co. v. Modern Muzzleloading, Inc.*, No. 97cv00660, 1998 U.S. Dist. LEXIS 23636, at *8-9 (M.D.N.C. Dec. 17, 1998) ("Generally, courts are reluctant to stay proceedings where a party is using the reexamination process merely as a dilatory tactic").  Indeed, a stay has been denied where, similar to here, the defendant knew of the prior art for eight months yet delayed in filing its request for reexamination.  *Freeman v. Minnesota Mining and Mfg. Co.*, 661 F. Supp. 886, 887 (D. Del. 1987).  Defendant chose not to seek reexamination of the patents-in-suit until this case had been well underway, and presumably with knowledge of the references that it would ultimately cite in its reexamination requests.  Defendant should not be allowed to benefit from its delay.

---

[3] Only Canadian Application No. 2029942 to Brooks was not also cited by Evident in the earlier case.

The undue prejudice that Plaintiffs will suffer from Defendant's requested stay of this case pending the reexamination requests, none of which have been granted and two of which have not even been accorded a filing date, weighs against Defendant's motion.

B. The Effect Of The Requested Reexaminations On The Issues In This Case Is Speculative At Best

In addition to the prejudicial effect on the non-movant—in this case Life—courts also consider the degree to which the proposed reexaminations would simplify the issues in the case. Because Defendant requested *ex parte*—rather than *inter partes*—reexaminations, it is unclear whether or to what degree any issues in this case will be simplified. This factor therefore weighs against granting the proposed stay.

1. Defendant Will Not Be Estopped By The Outcome Of The *Ex Parte* Reexaminations

For purposes of analyzing what, if any, effect the outcome of the reexaminations (if granted) will have on the issues in this case, it is important to bear in mind that Defendant filed *ex parte*—not *inter partes*—reexamination requests. The difference between the two types of reexaminations is significant. In particular, if it had pursued *inter partes* reexaminations, the outcome of the reexaminations would be binding on Defendant in this case. An *inter partes* reexamination includes the involvement of a third party, *i.e.*, the requester, and because it had an opportunity to participate in the proceedings the requester is foreclosed or estopped from raising in this case any issue it raised or could have raised in an *inter partes* reexamination. 35 U.S.C. § 315(c) (estopping the third-party requester of an *inter partes* reexamination from asserting the invalidity of a claim finally determined to be valid and patentable on any ground that the requester raised or could have raised during the inter partes reexamination).

An *ex parte* reexamination, in contrast, involves only the patent holder and the estoppel effect of an *inter partes* reexamination on third parties (or the court) does not exist. *Adaptor*, 2010 U.S. Dist. LEXIS 114997, at *8 (denying motion to stay pending *ex parte* reexaminations because, "While [patentee] will be held to any findings of invalidity or modification, [movant], and this court, will not be held to any findings of validity or modification. Thus, any possible

simplification of issues may only occur from outright findings of invalidity, and, even in that case, [patentee] has a statutory right to appeal the reexamination decision."); *eComSystems*, 2011 U.S. Dist. LEXIS 10174, at *6 (finding that judicial economy will not be served by a stay "because the pending *ex parte* reexaminations of the patents-in-suit would still leave [movants] free to relitigate the exact same issues before this Court"). This lack of estoppel with respect to an *ex parte* reexamination likely explains why Defendant chose the *ex parte* route. Indeed, its strategy to avoid the estoppel effect of an *inter partes* reexamination is already reflected in its invalidity contentions: Defendant asserts the exact same references to support its invalidity contentions as those it cited in its *ex parte* reexamination requests. *Compare* Ex. H, Def.'s Invalidity Contentions, at 2-3, *with* May 18, 2011 Tempesta Decl., Ex. 4 at 44, Ex. 5 at 511, and Ex. 6 at 842. The following table illustrates the substantial similarities between Defendant's invalidity contentions and its *ex parte* reexamination requests:

|  | Def.'s Invalidity Contentions<br><br>Ex. H at 2-3 | '551 Patent Reexam. Request<br><br>Tempesta Decl., Ex. 4 at 44 | '723 Patent Reexam. Request<br><br>Tempesta Decl., Ex. 5 at 511 | '069 Patent Reexam. Request<br><br>Tempesta Decl., Ex. 6 at 842 |
|---|---|---|---|---|
| "Mirkin" | cited | cited | cited | cited |
| "Brooks" | cited | cited | cited | cited |
| "Ewart" | cited |  | cited | cited |
| "Alivisatos I" | cited | cited | cited | cited |
| "Alivisatos II" | cited | cited | cited | cited |
| "Colvin" | cited | cited | cited | cited |
| "Dameron" | cited | cited | cited | cited |
| "Bigham" | cited | cited | cited | cited |
| "Mahtab" | cited | cited | cited |  |
| "Hines" | cited | cited | cited |  |

Because Defendant unquestionably relies on identical references in this case and for its requested *ex parte* reexaminations, whether any simplification of issues would result from any of the requested *ex parte* reexaminations is very much in doubt.

2. The Claims Are Likely To Survive *Ex Parte* Reexamination

Whether the outcome of the requested *ex parte* reexaminations will meaningfully simplify this case is also speculative based on the historical outcomes of reexaminations cited by Defendant itself. Based on the PTO statistics Defendant cited, there is only a 13% chance that the PTO will cancel all claims, leaving an 87% chance that at least one claim will survive. Ex. B, Mar. 31, 2011 PTO *Ex Parte* Reexamination Filing Data. Courts have taken notice of these statistics when refusing to stay a case pending reexamination. *See* Ex. I, Order Denying Motion To Stay, *Area 55, Inc. v. Celeras LLC*, No. 09cv2755 (S.D. Cal. May 26, 2010), D.I. 49, at 4 (citing the then-current statistics and stating that "while the USPTO grants 92% of requests for reexamination, only 11% of reexaminations result in cancellation of all claims. Given the reexamination statistics, Franmara's argument that the claims of the '614 patent will likely be invalidated is at best speculative. If the claims are not cancelled, invalidity will continue to be an issue in this litigation."). And as noted herein, two of the requests have not even been accorded a filing date by the PTO. Moreover, the reexaminations, which are necessarily based on alleged prior art, will not address Defendant's own claims based on indefiniteness, lack of enablement, and lack of written description, all of which Defendant asserts in its invalidity contentions. Ex. H, Def.'s Invalidity Contentions, at 10-15. Courts denying motions to stay have noted the fact that reexaminations address validity only with respect to prior art, while leaving a host of other validity and infringement issues to the courts. Ex. J, Order Denying Stay, *Molecular Bioprods., Inc. v. Porex Bio Prods., Inc.*, No. 02cv0227 (S.D. Cal. Feb. 21, 2003), D.I. 53, at 4-5 ("the existence of significant disputes regarding infringement and validity that the PTO cannot evaluate during reexamination virtually guarantees that the parties will return to this court to continue the litigation … [a]ssuming that the PTO allows some or all of the claims, with our without amendment, the court will still have to address MBP's contentions regarding indefiniteness, enablement, public use and sale, and prior invention, none of which will be addressed by the PTO during reexamination"); *eComSystems*, 2011 U.S. Dist. LEXIS 10174, at *7 ("it should be noted that the reexamination process only considers the validity of the patent with regard to prior art. The Patent and Trademark Office will not analyze other infringement

issues or other grounds for invalidity. Therefore, in the case at bar, these issues would remain and could ultimately require attention from this Court.").

Contrary to Defendant's contention, any benefit derived from a theoretical simplification of the issues in this case is far outweighed by the lack of estoppel on Defendant, the existence and survival of issues wholly unaddressed by the PTO, and the significant prejudice Life will suffer if this case is postponed.

C. This Case Is Well-Underway And Not In Its Infancy

Finally, the procedural status of this case weighs against granting the requested stay. Having been pending for over seven months, this case is not in its beginning stages. To the contrary, significant events have already taken place since Plaintiffs filed their complaint last October, including a multitude of discovery-related activity and the setting of a trial date. For example:

- The Early Neutral Evaluation Conference was conducted on March 2;
- A scheduling order is in place and a trial date is set;
- The parties filed their initial disclosures;
- Plaintiffs served their disclosure of asserted claims, preliminary infringement contentions, and related production pursuant to Pat. L.R. 3.1 and 3.2;
- Defendant served its invalidity contentions and related production pursuant to Pat. L.R. 3.3 and 3.4;
- The parties have propounded and responded to numerous interrogatories and requests for production;
- The parties expended significant time and effort negotiating a number of terms for a protective order, and moved Magistrate Judge Stormes to resolve the remaining disputes, which she did on April 26;
- Plaintiffs filed an amended complaint to add allegations of willful infringement;
- The parties negotiated electronic search information protocols that were subsequently entered;

- The parties have collectively produced over 18,000 pages of documents, with production poised to accelerate given the entry of the electronic search information protocols. Moreover, months ago Defendant represented that its document collection had already begun, Ex. K, March 15, 2011 Tempesta Letter; and
- The claim construction phase of this case has already commenced, including an exchange of positions on claim construction and an impending meet and confer.

Courts faced with similar procedural facts have held that sufficient events had taken place for the status of the case to weigh against a stay. For example, in *I-Flow Corp. v. Apex Med. Techs., Inc.*, the Court denied a motion to stay while noting that "the parties have filed their initial disclosures, Plaintiff has served its Disclosure of Asserted Claims and Preliminary Infringement Contetions, Defendants have served their Preliminary Invalidity Contentions, the parties have exchanged their preliminary proposed constructions and identification of extrinsic evidence, documents have been produced … and the parties submitted their Joint Claim Construction Chart." *I-Flow*, 2008 U.S. Dist. LEXIS 40995, at *6. The procedural posture of this litigation is virtually identical to the *I-Flow* case, and the developed state of this case weighs against a stay.

Additionally, the PTO has up to three months after the filing date to act on the requests (and as explained herein two of Defendant's requests are incomplete and have not even been assigned a filing date). 35 U.S.C. § 303(a). Thus, the requests may not be granted until August—if ever—and Plaintiffs' response to such a grant would likely be due in October or November. With the claim construction hearing set for October 21, the reexaminations, if granted, are unlikely to begin until after most or all of the claim construction stage of this case has taken place. This timing underscores the conclusion that this case is well beyond the initial phase, which weighs against a stay.

## III. <u>Conclusion</u>

The factors relevant to Defendant's motion all counsel for its denial. Plaintiffs, as direct competitors with Defendant in a two-player market, will suffer decreased market share

CONFIDENTIAL MATERIAL OMITTED during a delay that promises to be much longer than Defendant represents, particularly in view of Defendant's delay in seeking reexaminations and a stay of this case. Whether the outcome of the reexaminations—none of which have been granted, and two of which have not been accorded filing dates—will simplify the issues in this case is entirely speculative. Because the requests are for *ex parte* rather than *inter partes* reexaminations, Defendant will not be precluded from raising the same prior art arguments in this case. Numerous issues also exist in this case that the PTO will not address in any event. Finally, this case has advanced beyond its initial stages. Accordingly, Defendant's motion should be denied.

Dated: June 6, 2011

Polaphat Veravanich
LIFE TECHNOLOGIES CORPORATION
5791 Van Allen Way
Carlsbad, CA 92008
Attorney for Plaintiffs and Counter-Defendants LIFE TECHNOLOGIES CORPORATION and MOLECULAR PROBES, INC.

Matthew D. Murphey
TROUTMAN SANDERS LLP
550 West B Street, Suite 400
San Diego, CA 92101

Francis M. Wikstrom
Kristine E. Johnson
PARSONS BEHLE & LATIMER
One Utah Center
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, UT 84145-0898

Attorneys for Plaintiffs and Counter-Defendants
LIFE TECHNOLOGIES CORPORATION,
MOLECULAR PROBES, INC. and THE REGENTS OF
THE UNIVERSITY OF CALIFORNIA